MATTER OF L—L—

In EXCLUSION Proceedings

A-11666111

*Decided by Board June 7, 1961*

Excludability—Section 212(a)(19), 1952 act—Purchase of entry document not procurement by fraud within first clause.

An alien who on a prior occasion obtained entry into the United States with a Form I-151 which he purchased from a private person is not excludable under the first clause of section 212(a)(19) of the Act as having procured documentation by fraud. That charge cannot be sustained unless the fraud was practiced upon an authorized United States Government official by inducing him to issue a document through material misrepresentations made by the alien involved.

EXCLUDABLE: Act of 1952—Section 212(a)(19) [8 U.S.C. 1182(a)(19)]—Procured visa or documentation by fraud.

## BEFORE THE BOARD

**DISCUSSION:** The Acting District Director at El Paso, Texas, appeals from an order entered by the special inquiry officer, February 2, 1961, directing the applicant's admission to the United States as a nonquota immigrant. A brief in support of the appeal has been submitted. Counsel for the applicant has submitted a brief in support of the special inquiry officer's decision.

The applicant, a native and citizen of Mexico, male, unmarried, 24 years of age, applied for admission at the port of El Paso, Texas, on February 1, 1961. He presented a nonquota immigration visa (classification 0-1) issued by the American Consul at Juarez, Mexico, on January 30, 1961, valid to May 29, 1961. He also was in possession of, and presented, a Mexican passport issued to him on October 4, 1960, and valid to October 3, 1962. He was detained for a hearing by a special inquiry officer on the charge that he has procured documentation by fraud (8 U.S.C. 1182(a)(19)).

The issue before us is whether the applicant "*procured*" a "Form I-151" (alien registration receipt card) by fraud and then used said "Form I-151" to effect his entry into the United States on March 26, 1959. Concerning this issue, the applicant testified that on or about March 15, 1959, he was "talking with several men in the small plaza . . . in front of La Reforma theater in Cd. Juarez

324

(Mexico), . . . we were discussing various things including my efforts to get a visa. A man was standing outside my circle of acquaintances listening to our conversation. When I went into the theater . . . this man came and took the seat right behind me. He told me that he had heard the conversation and asked me if I really wanted to live in the United States. I told him I did and he said that he could get me a passport. I asked him what I need to do and he told me that all he needed was my photograph. I agreed to his plan . . . gave him the picture and he told me to meet him at the same place the next day at . . . about 7 PM."

The applicant further testified that he met the "stranger" as agreed and purchased the "mica" for $20 and it was agreed that "some time after I got a job, I could send him or hand him another $20. I never sent him the money because he never told me his name or where he lived."

The applicant's exclusion is sought under section 212(a)(19) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(19)). This provision of the Immigration and Nationality Act is composed of two parts which may be divided as follows:

(1) Any alien who seeks to procure, or has sought to procure, or has procured a visa or other documentation, by fraud, or by willfully misrepresenting a material fact;

(2) Any alien who seeks to enter the United States by fraud, or by willfully misrepresenting a material fact.

We have held that the first clause concerning procuring a visa or other documentation by fraud or by willfully misrepresenting a material fact is retrospective as well as prospective in its application. The second clause which refers to "any alien who seeks to enter the United States" has been held to be prospective in application only and, therefore, prior fraud or misrepresentation falling within that clause does not result in a finding of inadmissibility. *Matter of M—*, 6—149 (Atty. Gen., Sept. 13, 1954) ; *Matter of M—*, 6—752 (B.I.A., Oct. 18, 1955). The Immigration Service concedes that the applicant is not excludable under the second clause of section 212(a)(19), *supra*.

The burden here is upon the applicant to establish that he is admissible under the immigration laws. The Immigration Service maintains that the applicant is subject to exclusion under the first clause of section 212(a)(19), *supra*, because a preponderance of the evidence establishes that he obtained the document presented by him on the occasion of his entry on March 26, 1959, by fraudulently participating in its procurement. Two arguments are advanced in support of their position.

The first argument is based on the premise that the applicant did actively participate in whatever fraud was practiced because (1) he

furnished a photograph of himself in a deliberate preconceived plan to procure an entry document, (2) he paid a sum of money for a document executed in a name other than his own, (3) he received the document with his photograph attached thereto, and (4) he knew the document did not relate to him.

The Service argument, in our opinion, is directed to the issuance of the alien registration receipt card (Form I-151) rather than its procurement. Section 221(b) of the Immigration and Nationality Act (8 U.S.C. 1201(b)) requires an alien to "furnish copies of his photograph" in connection with his registration when applying for an immigration visa. Section 261 of the same Act (8 U.S.C. 1301) precludes the *issuance* of an immigration visa "until such alien has been registered and fingerprinted in accordance with section 221(b)," *supra*, with certain exemptions not pertinent here.

The second argument is based on the premise that the applicant fraudulently procured the entry document (Form I-151) during the inspection procedure accorded him at the time he entered the United States on March 26, 1959. The Service reasons, in substance, that an alien immigrant surrenders the Form I-151 in his possession when subjected to primary inspection at the port of entry. Subsequent examination and determination of admissibility which results in the return of the Form I-151 is in fact a reissuance of the entry document presented upon arrival. A fortiori, the acceptance of an irregular Form I-151 by an alien applicant, when it is returned by the inspection officer, amounts to fraud in the procurement on the part of the alien applicant.

The difficulty with the second argument is that it seeks to inject the procurement of any entry document into a procedure concerned solely with an alien's application to enter. The hypothesis adopted by the Immigration Service relates to the ground of exclusion contemplated by the second clause of section 212(a)(19), *supra*, which reads "any alien who seeks to enter the United States by fraud, or by willfully misrepresenting a material fact." We have held that the second clause of section 212(a)(19) is prospective in its application and has no relation to past entries. *Matter of M—*, 6—752 (B.I.A., Oct. 18, 1955).

The Immigration Service makes no claim that the applicant now seeks to enter the United States by fraud or misrepresentation. The evidence affirmatively establishes that the applicant informed the consul of his entry in 1959 when he applied for the visa issued to him on January 30, 1961. The Service does claim, however, that the applicant is now excludable by reason of his fraudulent procurement of an entry document that antedates the granting of a lawfully issued visa. The case of *Duran-Garcia* v. *Neelly*, 246 F.2d 287 (C.A. 5, 1957), is cited in support of this claim.

We have no difficulty in reconciling the court's ruling in *Duran-Garcia* v. *Neelly*, *supra*, with the conclusion we reach in the instant case. Duran-Garcia applied for and obtained local crossing cards on two occasions, stating in the applications that she desired this privilege for the purpose of shopping in the United States. Soon after obtaining the crossing privileges, she secured employment in the United States as a domestic. Thereafter, she obtained an immigration visa and she was admitted for permanent residence. Deportation proceedings were instituted under an order to show cause charging fraud in the procurement of the 1953 border-crossing card (8 U.S.C. 1251(a)(1) and 1182(a)(19)). She defended, *inter alia*, on the ground that her deportation could not be based on fraudulent activity which antedated the granting of the visa with which she last entered the United States for permanent residence. The court ruled that the first clause of section 212(a)(19) "permitted" the deportation of an alien who at any time in the past had obtained an entry document by means of material fraudulent statements notwithstanding the fact that the alien thereafter secured a visa untainted by fraud.

A significant factor which distinguishes the cited case from the case before us is that during the deportation hearing Duran-Garcia admitted that she had misrepresented to the immigration officer in the 1953 border-crossing application the true purpose for which she sought to enter the United States. Unlike Duran-Garcia, the applicant in the instant case made no material misrepresentation to an official of the United States Government when procuring the I–151 which he presented on the occasion of his entry in March 1959. He obtained his entry documents from a stranger who, insofar as the record shows, had no official connection with the United States Government.

The applicant obtained his entry document by purchase rather than by falsely stating a material fact to an immigration officer. The statute (8 U.S.C. 1182(a)(19)), as we read it, contemplates an alien "who seeks to procure, or has sought to procure, or has procured a visa or other documentation . . . by fraud or by willfully misrepresenting a material fact" to an officer of the United States Government duly authorized to issue said documentation, and not to an individual who has no official connection with the Government and, therefore, not authorized to issue visas or other entry documents.

The Service concedes that there are no published decisions squarely in point with the applicant's case. They do cite two cases,[1] however, wherein we sustained charges laid under the first clause of

---

[1] *Matter of P—F—*, 6—164 (B.I.A., May 28, 1954), *Matter of O—*, 7—486 (B.I.A., May 29, 1957).

section 212(a)(19), *supra*. The aliens in both cases procured documentation by means of fraud practiced upon officials of the United States Government duly authorized to issue the entry documents presented by them at the time of their unlawful entry.

This Board in *Matter of G—M—*,[2] on the other hand, did *not* sustain a section 212(a)(19) "procurement charge" on the basis of evidence which established that the Service officer did not comply with existing regulations when he issued the border-crossing card used by the alien to effect an entry in 1941. We said that an unlawful issuance of the border-crossing card would not support a "procurement of documentation" charge because, as a matter of law, "the alien's acceptance thereof did not constitute a valid 'procurement of documentation' within the meaning of section 212(a)(19)." *Matter of G—M—*, *supra*, at page 73.[2] Our decisions in the section 212(a) (19) cases cited by the Service are consistent in that before a "procurement of documentation" charge has been sustained there was an issuance of documentation by an authorized official of the United States Government. The fraud was upon a Government officer in inducing him to issue a document on the basis of material misrepresentations by the alien involved. This factor is not present in the case before us.

The instant case does not present a factual situation unique in the administration of the excluding provisions of the immigration laws. Although we find no published decisions directly concerned with a purchased entry document and its relation to the first clause of section 212(a)(19), *supra*, there are two elementary principles of law which we have always applied to such cases: (1) the purchase of a document does not amount to *procurement* by fraud or *willfully misrepresenting a material fact* because the alien who acquires possession by purchase does so by the tender of something of value and not by the practice of fraud or willfully misrepresenting a material fact; (2) as a condition precedent to the *procurement of documentation* by fraud or willfully misrepresenting a material fact within the meaning of section 212(a) (19) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(19)), there must be an issuance to the alien of the said documentation by an authorized official of the United States Government.

We will affirm the order entered by the special inquiry officer admitting the alien as a nonquota immigrant. An appropriate order will be entered dismissing the Acting District Director's appeal.

**ORDER:** It is directed that the appeal be and the same is hereby dismissed. The alien's admission as a nonquota immigrant under the provisions of section 101(a)(27)(C) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(27)(C)) is hereby affirmed.

---

[2] *Matter of G—M—*, 7—40, approved by Atty. Gen., Apr. 2, 1956.